UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ANTONIA M. RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-400 |
| | § | |
| CITY OF LA VILLA TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court now considers the "Defendants' Amended Second Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(b)(6), Or in the Alternative Motion for More Definite Statement Pursuant to F.R.C.P. 12(e),"[1] filed by Defendants Hector Elizondo ("Elizondo") and the City of La Villa ("the City") (collectively, "Defendants"). Antonia Rodriguez ("Plaintiff") has responded,[2] and Defendants have replied.[3]

After considering the motion, response, reply, record, and relevant authorities, the Court **GRANTS** in part and **DENIES** in part the motion.

### I.    Factual Background

In June of 2010, Eloy Cardenas, the City Police Chief, asked Rafael Javier Rodriguez ("Rodriguez") to assist in a criminal investigation of Elizondo, the City Mayor, "for solicitation and for official oppression."[4] On August 16, 2010, Elizondo was arrested and arraigned on charges of official oppression and prostitution.[5]  On August 17, 2010, Chief Cardenas hired Rodriguez as City Administrator, and the City and Rodriguez entered into an employment

---

[1] Dkt. No. 17.
[2] Dkt. No. 19.
[3] Dkt. No. 20.
[4] Dkt. No. 11 at p. 4, ¶3.4.
[5] *Id.*

contract.[6] In May of 2011 however, Elizondo won reelection and promptly suspended Rodriguez.[7] On May 30, 2011, Elizondo and "the Board of Alderman" fired Rodriguez from his position as City Administrator.[8]

Rodriguez later died, at a time unknown to the Court. On May 28, 2013, Plaintiff filed suit in county court on her own behalf and as administrator of her late husband's estate.[9] Defendants timely removed to this Court.[10] Plaintiff alleges causes of action for violations of due process interests in continued employment and liberty to work, and for violations of the rights of free speech, of freedom of association, and to petition the Government.[11] Pursuant to 42 U.S.C. §§ 1983 and 1985, she seeks to recover damages for injury to reputation and character, for lost earnings and diminished earning capacity, and for mental anguish. She also seeks attorneys' fees, expert fees, and litigation expenses.

Defendants now move to dismiss Plaintiff's due process, liberty, free speech, and § 1985 conspiracy causes of action.[12] Defendants also seek to dismiss Plaintiff's claims for exemplary damages, expert fees, future lost wages, and claims against Elizondo in his individual capacity.

## II.    Clarification of the Docket and Plaintiff's Response

*Redundant Filings*

The Court notes that Defendants and Plaintiff each have filed two versions of their respective motions. Defendants amended their motion slightly, while Plaintiff simply matched

---

[6] *Id.* at p. 3, ¶3.1.

[7] *Id.* at p. 4, ¶3.5.

[8] *Id.*

[9] Dkt. No. 1 at p. 9. As heir to and administrator of her deceased husband's estate, Plaintiff possesses standing to bring his civil rights claim. *See* Pluet v. Frasier, 355 F.3d 381, 383 (5th Cir. 2004) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits."); Tex. Civ. Prac. & Rem. Code Ann. § 71.021 ("A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person.").

[10] Dkt. No. 1 at pp. 7, 1.

[11] Dkt. No. 11 at p. 5, ¶4.4.

[12] Defendants do not challenge the causes of action based on the rights of freedom of association and to petition the government.

Defendants' contributions. In the interest of docket clarity, the Court **STRIKES** the earlier-filed motions, Docket Numbers 16 and 18, and adopts the later-filed motions, Docket Numbers 17 and 19, as the live pleadings.

*Plaintiff's Response*

Plaintiff objects in her response that the motion to dismiss "is being improperly used in in an attempt to resolve factual issues or the merits of the case . . . Plaintiffs [sic] respectfully request that appropriate leave to amend [sic] consistent with the completion of discovery deadline of July 28, 2011."[13] This characterization of the motion before the Court mischaracterizes the motion and ignores the Federal Rules of Civil Procedure. Defendants have attached no evidence to the motion to dismiss, which might convert it to a motion for summary judgment,[14] instead confining the scope of their motion to the pleadings. Further, a motion to dismiss may be made at any time prior to or with the answer,[15] and Defendants filed this motion in response to Plaintiff's Amended Complaint. A motion to dismiss made after the answer – say, at the end of discovery, as Plaintiff requests – properly would be pled as a 12(c) motion for judgment on the pleadings. Thus, Defendants have made the motion properly, and it is properly before the Court. The Court **DENIES** Plaintiff's request to allow discovery to conclude before ruling on the motion to dismiss.

The Court also notes that Plaintiff's response defends only her cause of action based on freedom of association. By choosing to defend one of the few claims which Defendants have not attacked, Plaintiff has, in effect, failed to respond to the motion to dismiss. As a result, the Court will disregard the response in its analysis below.

---

[13] Dkt. No. 19 at pp. 2-3.
[14] FED.R.CIV.P. 12(d).
[15] FED.R.CIV.P. 12(b).

### III.    Standards for the Motion to Dismiss and Applicable Law

Before analyzing the sufficiency of Plaintiff's pleadings, the Court will review the law applicable to a motion to dismiss, as these standards of pleading apply to each cause of action. The Court will then review the elements of each of the four causes of action Defendants challenge.

*Motions to Dismiss*

To begin, "[t]he ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."[16] To state a claim, a pleading merely must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."[17]

To adequately show entitlement to relief, however, the pleading must allege a sufficient factual basis on which to rest the legal claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] The "plausibility" standard requires the complaint to state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[19] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[20] The Court regards all such well-pleaded facts as true and views them in the light most favorable to the plaintiffs.[21] However, pursuant to *Ashcroft v. Iqbal*,[22] the Court disregards from its analysis

---

[16] Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter, 607 F.3d 1029, 1032 (5th Cir. 2010) (citation omitted).
[17] FED. R. CIV. P. 8(a).
[18] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
[19] In re So. Scrap Material Co., 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly* at 556).
[20] *Twombly*, 550 U.S. at 555.
[21] *Id*.
[22] Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

any conclusory allegations as not entitled to the assumption of truth.[23] If the pleading when stripped of conclusory allegations fails to plead the elements of the cause of action, the Court will dismiss that cause of action for failure to state a claim on which relief may be granted.

*Due Process and a Property Interest*

Having reviewed the pleading standards applicable to each cause of action, the Court begins its review of the individual causes with the due process claims. "The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest."[24] Thus, to assert a claim for deprivation of due process in continued employment, a plaintiff must possess a property right in that employment. "To prevail on a claim of deprivation of employment without due process of law, plaintiff must show that he had a cognizable property interest in his continued employment and that the process he was afforded was insufficient to protect that interest."[25] Where the plaintiff does not possess a property right, no process is due.[26] Property rights in turn are established by state law, local law, or a contract.[27]

It is worth noting that Texas law presumes that plaintiffs possess no property interest in continued employment. "Texas law imposes a strong presumption in favor of at-will employment. Where a plaintiff relies on an employment policy, as opposed to an employment

---

[23] *See id.* at 1949-50 (2009).

[24] DePree v. Saunders, 588 F.3d 282, 289 (5th Cir. 2009).

[25] Garcia v. Reeves Cnty., Tex., 32 F.3d 200, 203 (5th Cir. 1994) (summarizing Bishop v. Wood, 426 U.S. 341 (1976)). *See also* Blackwell v. Laque, 275 F. App'x 363, 368 (5th Cir. 2008) ("To establish a viable due process claim, Plaintiffs must show that they had a property interest in continued employment. There is no automatic property interest in continued government employment.").

[26] Roberts v. Titus Cnty. Mem'l Hosp., 129 F. App'x 82, 85 (5th Cir. 2005) ("A property right in maintaining employment may not be deprived without due process. However, no process is due where no protected property interest exists. As the constitution does not itself create property interests, a plaintiff claiming deprivation of a property right must clearly establish existence of such a right. In ascertaining the existence of a property interest, we look to state law." (internal citations omitted)).

[27] Cobb v. City of Harahan, 516 F. App'x 337, 340 (5th Cir. 2013) ("[I]n order to advance a due process claim in connection with his termination, [Cobb] must point to some state or local law, contract or understanding that creates a property interest in his continued employment."). *See also* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

contract, to rebut the presumption of at-will employment, the proffered employment policy must contain explicit contractual terms altering the at-will relationship in a meaningful way (e.g., through an employment contract). Texas courts are reluctant to imply deviation from at-will employment from ambiguous employment policies."[28] As a result, a plaintiff seeking to clearly establish the existence of a property right in employment must allege a contract or policy which explicitly alters the at-will relationship.

Once such an interest is established, the plaintiff is entitled to a certain minimum of due process prior to termination. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[29]

*Due Process and a Liberty Interest*

A plaintiff's interest in liberty to gain employment can be affected by stigmatizing charges made public, which create a badge of infamy. However, the mere fact that a plaintiff was fired, though distressing, does not affect a liberty interest. If stigmatizing charges are made public, then the employee is entitled to request, and to receive, a name-clearing hearing. "[T]he process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee."[30]

The elements of a claim for such a deprivation of a liberty interest are clear and undisputed: "A constitutional violation exists only where a plaintiff can show: (1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity

---

[28] Roberts v. Titus Cnty. Mem'l Hosp., 129 F. App'x 82, 85 (5th Cir. 2005) (internal citations omitted).
[29] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).
[30] Rosenstein v. City of Dallas, Tex., 876 F.2d 392, 395 (5th Cir. 1989) opinion reinstated in part, 901 F.2d 61 (5th Cir. 1990).

to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing. A plaintiff must allege facts to support each of these elements in order to state a claim."[31]

*Free Speech*

The elements of a claim for a deprivation of the right to free speech are similarly clear and undisputed. As the Fifth Circuit has summarized, "[t]o establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[32]

Precedent has added two glosses to the second element. First, for a public employee to receive First Amendment protection, *Garcetti* requires him to demonstrate that he did not speak pursuant to his public duties; only if he spoke as a citizen will the Court consider whether he spoke on a matter of public concern.[33] Second, as always, federal pleading standards require a plaintiff to give specific instances of speech.

*Claims Pursuant to § 1985 (3)*

Section 1985(3) prohibits a conspiracy to deprive "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[34] The elements of this claim are similarly clear and undisputed: "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for

---

[31] Higgenbotham v. Connatser, 420 F. App'x 466, 468 (5th Cir. 2011) (citing Hughes v. City of Garland, 204 F.3d 223, 226 (5th Cir.2000)).

[32] Nixon v. City of Houston, 511 F.3d 494, 497 (5th Cir. 2007) (internal citations omitted).

[33] Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes[.]").

[34] 42 U.S.C.A. § 1985(3).

the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States. Additionally, the conspiracy must also have a racially based animus."[35] The additional element bears repeating. While the Supreme Court has hinted that animus against political classes or groups may satisfy § 1985(3), the Fifth Circuit strictly requires allegations of conspiracies based on racial animus.[36] Only such allegations state a claim pursuant to § 1985(3) in the Fifth Circuit.

### IV.     Motion to Dismiss Due Process Claims Pursuant to § 1983

Having reviewed the facts and applicable law, the Court will assess the sufficiency of Plaintiff's causes of action based on Rodriguez' due process interests in continued employment and in liberty to work.

*Section 1983 and Employment Interest*

Defendants argue that Plaintiff has failed to adequately allege a violation of due process, because Plaintiff has not proved Rodriguez possessed a property interest in his continued employment, and because Plaintiff has not proved the method of his termination lacked due process.

Taking the second argument first, Defendants write that Plaintiff must "show that the process used by Defendants somehow lacked fundamental fairness . . . Plaintiff has not identified any process about which he complains . . . ."[37] However, like the plaintiff in *Garcia v. Reeves*

---

[35] Lockett v. New Orleans City, 607 F.3d 992, 1002 (5th Cir. 2010) (internal citations omitted).

[36] *See* Newberry v. E. Texas State Univ., 161 F.3d 276, 281 n.2 (5th Cir. 1998) ("In Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754 (5th Cir.1987), we held that to state a claim under § 1985(3), plaintiffs must allege that they are victims of a race-based conspiracy. . . Deubert remains the law in this circuit."); *see also* Bryan v. City of Madison, Miss., 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy.").

[37] Dkt. No. 17 at p. 9.

*County*,[38] Plaintiff contends that he was terminated without any due process at all: "The Plaintiff had a protected due process property interest in his continued employment and was never given any meaningful due process before or after his unlawful discharge."[39] And like the defendants in *Garcia*, Defendants contend that Plaintiff was not due any process, because he lacked a property interest in his continued employment.

Defendants correctly point out that "[i]n order for the alleged right to be legally enforceable as to constitute a property right, Plaintiff would need proof that the governing body itself, *i.e.*, the City Commission, somehow approved that right."[40] The method of approving that right need not be left with a mysterious "somehow." It would simply be any mode of employment other than at-will employment, as evidenced by an employment policy or mutual understanding such as a contract.

Of course, to state a claim, Plaintiff need not *prove* Rodriguez possessed a property right in his employment. To overcome a motion to dismiss, Plaintiff merely need *allege* that he possessed such a right. Plaintiff comes closest to alleging this when she writes: "The Plaintiff also had a protected due process property interest in his continued employment . . . ."[41] Unfortunately, this is a textbook example of a legal conclusion, rather than an asserted fact which supports the legal conclusion. Legal conclusions are not entitled to a presumption of truth; rather, the Court excludes such conclusory statements from the analysis. Excluding this lone statement then, Plaintiff has merely pled that Rodriguez was employed, and then fired. Thus,

---

[38] Garcia v. Reeves Cnty., Tex., 32 F.3d 200, 202 (5th Cir. 1994) ("Appellant does not dispute that Appellees were afforded no due process when they lost their jobs. Appellant's position is that they were not due any process.").
[39] Dkt. No. 11 at p. 7, ¶4.13.
[40] Dkt. No. 17 at p. 8.
[41] Dkt. No. 11 at p. 7, ¶4.13. The Court also notes that Plaintiff references an employment contract, but the complaint contains no allegation that Rodriguez' employment status was not at-will.

Plaintiff has failed to allege any fact supporting the existence of a protected due process property interest.

As a result, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted, and **DISMISSES** Plaintiff's claim for lack of due process in Rodriguez' employment termination.

### V.    Motion to Dismiss First Amendment Claims

Defendants bring two flawed arguments to bear on Plaintiff's free speech claim. Defendants point out that Rodriguez was hired *after* Chief Cardenas approached him for the investigation and arrested the mayor,[42] but then assert, "Plaintiff still has not identified how Rodriguez's alleged speech was as a citizen, rather than as part of his duties and responsibilities as City Administrator."[43] Obviously Rodriguez could not speak as City Administrator prior to his employment as City Administrator. If Rodriguez spoke prior to his employment as City Administrator, but pursuant to employment as an investigator, then Defendants' line of argument that *Garcetti* precludes Plaintiff's free speech claim would merit consideration. However, as explained below, the analysis is unnecessary.[44]

Defendants also assert that Plaintiff has not pled "how Defendants allegedly interfered with Rodriguez's right to speak, however, which is necessary to establish a First Amendment violation."[45] This inaccurate statement of the law is belied by Defendants' own recitation of the elements of a free speech cause of action,[46] elements the Court has already reviewed, and which

---

[42] Dkt. No. 17 at p. 4.
[43] *Id.* at p. 6.
[44] In addition, nothing in the record indicates Rodriguez was employed as an investigator prior to his employment as City Administrator. If he was not employed at all prior to his employment as City Administrator, then he spoke as a citizen.
[45] Dkt. No. 17 at p. 4.
[46] Dkt. No. 17 at p. 5.

demonstrate that the government need not *prevent* a citizen's speech to violate the First Amendment. The government also violates the First Amendment by *retaliating* against speech.

Notwithstanding these flawed arguments, Defendants correctly point out that Plaintiff has not identified any statement Rodriguez made, or to whom or when Rodriguez spoke.[47] Plaintiff's rambling complaint fails to include a single hard fact which might support the legal conclusion that Rodriguez engaged in free speech for which he suffered retaliation. While the Court bears in mind that Rodriguez has passed away, thereby depriving Plaintiff of the best source of information for the details of her complaint, some other source might have been able to provide the modicum of factual specificity which federal pleading standards require. Lacking a factual foundation for its legal conclusions, Plaintiff's complaint fails to state a claim upon which relief may be granted. Accordingly, the Court **DISMISSES** Plaintiff's cause of action based upon violations of the right to free speech.

### VI.    Motion to Dismiss Conspiracy Claims Pursuant to § 1985(3)

Defendants argue that § 1985(3) does not apply to this case, and that Plaintiff has failed to adequately allege a conspiracy.[48] And indeed, Plaintiff mentions a conspiracy precisely once in passing: "Defendant Elizondo, in collusion and conspiracy with the City denied the Plaintiff due process for his protected liberty and property interests."[49]

Plaintiff has failed to state a claim, for three main reasons. First, the Fifth Circuit has held that employees of the same governmental agency constitute a single legal entity and thus cannot conspire among themselves.[50] Second, the Fifth Circuit requires that § 1985 conspiracy claims

---

[47] *Id.* at p. 4.
[48] Dkt. No. 20 at pp. 6-7.
[49] Dkt. No. 11 at p. 7, ¶4.13.
[50] *See* Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994); Swilley v. City of Houston, 457 F. App'x 400, 404 (5th Cir. 2012) ("The City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."). *See also* Marceaux v. Lafayette City-Parish Consol. Gov't, 921 F. Supp. 2d 605, 643 (W.D. La. 2013), appeal dismissed (May 14, 2013).

allege racial animus, which Plaintiff does not do. Third, Plaintiff asserts the legal conclusion of conspiracy without alleging facts to support that conclusion, once again merely reciting the elements of the claim.

Accordingly, the Court **DISMISSES** Plaintiff's claim for conspiracy to violate Rodriguez' civil rights.

### VII.    Motion to Bar Punitive Damages and Expert Fees

Defendants write that exemplary or punitive damages are "barred by state and federal law."[51] While Defendants do not explain how state law could bar recovery in federal court on a federal claim, federal law permits plaintiffs to recover only compensatory damages, not punitive damages, from municipalities.[52] Because Plaintiff may not recover punitive damages from the City, the Court **DISMISSES** this claim as against the City.

Moreover, the text of § 1988(c) clearly allows the award of expert fees only for actions brought pursuant to § 1981. "In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."[53] Because Plaintiff does not bring suit pursuant to § 1981, she cannot recover expert fees. The Court therefore **DISMISSES** the claim for expert fees.

Finally, the complaint contains an allegation that "Plaintiff was unable to attend to his occupation and thereby has suffered and continues to suffer a loss of wages in the past . . . ."[54] Defendants characterize this gnomic statement as a claim for *future* lost wages.[55] Because

---

[51] Dkt. No. 20 at p. 7.
[52] *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981) ("Damages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself.").
[53] 42 U.S.C.A. § 1988.
[54] Dkt. No. 11 at p. 9, ¶5.3.
[55] Dkt. No. 17 at p. 12.

Plaintiff does not allege wrongful death, Defendants ask the Court to dismiss any claim for wages which Rodriguez might have earned had he not passed away. Plaintiff's pleading does not lend itself to easy interpretation, but the Court interprets this statement to mean no more than that Plaintiff seeks to recover the wages Rodriguez lost after his employment termination and before his death. Because the Court ascribes a different meaning to this obtuse construction, the Court **DENIES** the motion to dismiss.

### VIII.   Motion to Dismiss Claims Against Elizondo in His Individual Capacity

Defendants claim, "Plaintiff . . . has identified no action even allegedly taken by this Defendant [Elizondo] in his individual capacity. Plaintiff therefore appears to complain only of Defendant Elizondo's actions in his official capacity."[56] Defendants' use of the phrase "individual capacity" remains unclear, but the Court infers that Defendants mean Defendant Elizondo could only be sued in his individual capacity if he had acted for a private aim and in a private manner.

In fact, the law establishes precisely the opposite. If Plaintiff had alleged Elizondo acted in a private capacity and not as the mayor, then Plaintiff could *not* sue Elizondo under § 1983. "It is well established that the act of one who is a state officer, not taken by virtue of or clothed with his state authority, will not be considered as done under color of state law simply because the individual, although pursuing private aims, happens to be a state officer."[57]

As the Court has reviewed above, Plaintiff alleges Elizondo, acting in his capacity as the newly elected mayor, fired Rodriguez for exercising his First Amendment rights. In a suit against an official in his individual capacity, "it is enough to show that the official, acting under color of

---

[56] Dkt. No. 17 at p. 13.
[57] Webb v. Morella, 522 F. App'x 238, 242 (5th Cir. 2013).

state law, caused the deprivation of a federal right."[58] Plaintiff has therefore pled a claim against Elizondo in his individual capacity.

Thus, although the Court has dismissed certain claims, the Court **DENIES** the motion to dismiss Plaintiff's remaining claims against Elizondo in his individual capacity.

### IX.    Holding

The Court urges counsel for Plaintiff to review the pleading requirements the Supreme Court detailed in *Iqbal* and *Twombly*.[59] By writing that the complaint "provides fair notice of the claims made and the facts alleged are sufficient to show a plausible claim for relief,"[60] counsel demonstrates a fatal confusion of Texas and federal pleading standards. Federal pleading standards require substantially more factual specificity than Texas pleading standards.

The Court **GRANTS** the motion to dismiss as to Plaintiff's causes of action based on due process interests in property and liberty, on the right to free speech, and on § 1983(3) conspiracy, as well as to the claims for punitive damages and expert fees. However, the Court **DENIES** the motion to dismiss as to Plaintiff's claims for past lost wages and against Elizondo in his individual capacity.

IT IS SO ORDERED.

DONE this 21st day of April, 2014, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[58] Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009).
[59] Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).
[60] Dkt. No. 19 at p. 2.